## DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

GOVERNMENT OF THE VIRGIN ISLANDS,   )
VIRGIN ISLANDS HOUSING FINANCE   )
AUTHORITY,   )
   )
              Plaintiffs,   )    **Case No. 3:22-cv-00052**
   )    **(Super. Ct. 81/2022)**
EX REL: ABIEL OSORIO COTTO, BENJAMIN )
OSORIO, LUIS ENRIQUE CAMACHO   )
MATTOS, DAVID PAUL GAUTREAUX,   )
JEREMY SANTOS RAMIREZ, NORBERTO   )
RIVERA FRESE, RAFAEL ERNESTO   )
PASTRANA LUGO, and BRAYLIN LAMBERT )
and BLAINE LAMBERT, successors in   )
interest of DAVID LAMBERT, deceased,   )
   )
              Plaintiff-Relators,   )
   )
v.   )
   )
GERALD TOLIVER dba BLUE WATER   )
STAFFING COMPANY, THOMAS SUTTON, T. )
J. SUTTON ENTERPRISES, LLC, CITADEL   )
RECOVERY SERVICES, LLC, and AECOM   )
Caribe, LLP,   )
   )
              Defendants.   )
   )

**Peter J. Lynch, Esq.**
Fuller & Lynch Advocacy Group, PLLC
St. Thomas, U.S.V.I.
     *For Plaintiff-Relators,*

**Gregg R. Kronenberger, Esq.**
**Charles E. Lockwood, Esq.**
Dudley Newman Feuerzeig LLP
St. Thomas, U.S.V.I.
     *For Defendant Citadel Recovery Services, LLC,*

**Michelle T. Meade, Esq.**
**G. Alan Teague, Esq.**

**Kristen J. Goulart, Esq.**
Meade & Teague, LLC
St. Thomas, U.S.V.I.
  *For Defendant AECOM Caribe, LLP*


<u>**MEMORANDUM OPINION**</u>

**MOLLOY, Chief Judge.**

 **BEFORE THE COURT** is Plaintiff-Relators' motion to remand this matter to the Superior Court of the Virgin Islands. (ECF No. 5.) Defendant Citadel Recovery Services, LLC (Citadel) filed an opposition to the motion, (ECF No. 18), and Plaintiff-Relators (Relators) filed a reply thereto. (ECF No. 24.) For the reasons outlined below, the Court will grant the motion.

## I. FACTUAL AND PROCEDURAL HISTORY

 The Court finds the following facts for purposes of the motion for remand. In September 2017, Hurricanes Irma and Maria struck the U.S. Virgin Islands, damaging and destroying thousands of homes. In response to the disaster, the Federal Emergency Management Agency (FEMA) funded the Emergency Home Repair Virgin Islands (EHRVI) recovery program, which was administered by the Virgin Islands Housing Finance Authority (VIHFA). As part of EHRVI, the VIHFA contracted with prime contractor, AECOM Caribe, LLP (AECOM), to perform construction and repairs in the hurricane recovery efforts. Complaint (Compl.) (ECF No. 18-7) at 2-3, Exhibit A. AECOM agreed to provide construction repair services for the Sheltering Temporary Essential Power (STEP) Program, a program of EHRVI, and entered into a Master Subcontract with Citadel as a sub-prime contractor as part of STEP. Compl. at 4, Exhibit B (ECF No. 18-8).  Citadel, in turn, subcontracted for some of the construction and repair services with TJ Sutton Enterprises, LLC, and TJ Sutton subcontracted with Toliver. Compl. at 4, 8-9, Exhibits C-D (ECF No. 18-8).

 Relators allege that they "are among ninety (90) workers who provided roof repair labor services as part of the . . . [STEP] program, working for Defendants . . . in St. Thomas between January 14, 2019[,] and March 2, 2019, but were not paid by the Defendants." Compl. at 2. They bring this purported *qui tam* action under the Virgin Islands False Claims

Act (VIFCA), 33 V.I.C §§ 3501-3509, claiming that the billing and invoices submitted by Defendants to the VIHFA for payment under the referenced contracts/subcontracts for hours and services performed by Relators were fraudulent, because the VIHFA paid Defendants pursuant to those invoices, but Defendants failed to use the monies to pay Relators. Compl. at 3-4. Relators state that they disclosed the information and allegations contained in the complaint to the Government of the Virgin Islands ("Government") before filing suit, *id*. at 4, but they do not state whether or not the Government and/or the VIHFA decided to intervene in the action. The record is devoid of any appearances by or on behalf of the Government or the VIHFA.

Relators also are the same plaintiffs in the matter *Cotto et al. v. TJ Sutton Enterprises, LLC., et al*., Case No. 3:21-cv-00016 (D.V.I.). That *Cotto* case was removed from the Virgin Islands Superior Court to this Court and involves the plaintiffs' wage claims against TJ Sutton and an alleged subcontractor under Defendant AECOM's subcontracts with some of the same co-Defendants here. *See* Case No. 3:21-cv-00016 (D.V.I.), ECF No. 1. That proceeding was referred to arbitration, which remains ongoing. *Id*. at ECF Nos. 69, 120; Notice of Removal (Notice) (ECF No.1) at 2-3.

Relators originally filed their Complaint in the Superior Court of the Virgin Islands on March 2, 2022. *See* Notice at 3, ¶ 6. As Citadel notes both in the Notice and their opposition to the motion to remand, the original Complaint, filed in the Superior Court of the Virgin Islands, was under seal, as required by the VIFCA. 33 V.I.C. §3504(b)(2).[1] *See* Notice at 2, ¶ 3; Opposition to Motion to Remand (Opp'n) (ECF No. 18) at 2, 6-7, 9-10.

On August 12, 2022, Citadel entered its appearance in the Superior Court of the Virgin Islands. On the same date, Citadel filed a notice of removal in this Court. (ECF No. 1.) In its Notice, Citadel asserts that this Court has diversity jurisdiction over this action. *See* Notice at 2-4.

Relators filed a motion to remand this matter to the Superior Court of the Virgin Islands on August 15, 2022. (ECF No. 5.) In their motion, Relators argue that the Court must

---

[1] The subparagraph provides in full: "A complaint filed by a qui tam plaintiff under this subsection must be filed in the Superior Court *in camera*, and subject to paragraph (5), may remain under seal up to 60 days. No service may be made on the defendant until after the complaint is unsealed." 33 V.I.C. § 3504(b)(2).

remand this matter because the removal was untimely and the Notice was defective. Mot. at 2, ¶¶ 2-3. Relators also assert that the Court must remand this matter for lack of subject matter jurisdiction. *Id.* at 2-4, ¶¶ 4, 6-7.

In Citadel's opposition to the motion, filed September 12, 2022, it argues that removal was timely because Citadel was never properly served. Opp'n at 2-4, 7-9. In support thereof, Citadel attaches the declaration of Joshua Fouquet, Citadel's agent for service of process. *See* Decl. of Joshua Fouquet (ECF No. 18-3). Citadel also maintains that the Court has both federal question and diversity subject matter jurisdiction. Opp'n at 2, 4-6, 10-17.

Relators' untimely reply[2] to the opposition reiterates that the Court lacks subject matter jurisdiction, based on either federal question or diversity of citizenship. Reply (ECF No. 24) *passim*.

## II. LEGAL STANDARD

An action may be removed to federal district court if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Any defendant may

> file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a). The time for removal is 30 days after service of the complaint. 28 U.S.C. § 1446(b). Once an action is removed, a plaintiff may challenge removal by moving to remand the case to state court. 28 U.S.C. § 1447(c). A case that is removed shall be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.*

---

[2] The time for filing a reply is seven days from service of the response. LRCi 6.1(b)(5). Since Citadel's opposition to the motion to remand was filed on September 12, 2022 (ECF No. 18), Relator's reply was due on September 19, 2022. Relators requested and were given an extension to September 26, 2022. *See* ECF Nos. 19 and 20. On September 26, 2022, Relators filed another motion for extension of time. ECF No. 21. However, the document that was filed appears to be the same document docketed at ECF No. 19, requesting an extension date of September 26, 2022. *See* ECF No. 21. The motion was not decided and remains pending. Relators attempted to file their reply on September 27, 2022, and again on September 30, 2022, but the filings were deemed incorrect. *See* ECF Nos. 22 and 23. A corrected reply was filed with the Court on October 3, 2022. ECF No. 24.

To defeat a motion to remand for lack of subject-matter jurisdiction, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Generally, "[f]ederal removal statutes 'are to be strictly construed against removal and all doubts are to be resolved in favor of remand.'" *Feuerzeig v. Innovative Communications Corp.*, 174 F. Supp. 2d 349, 353 (D.V.I. 2001) (quoting *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). The party asserting diversity jurisdiction bears the burden of proving diversity of citizenship by a preponderance of the evidence. *In re Lipitor Antitrust Litig.*, 855 F. 3d 126, 150 (3d Cir. 2017). Diversity must exist both at the time the state court complaint was filed and at the time of removal. *Id.* at 150-51. At the same time, "[n]o changes in citizenship after the time of filing (and, as relevant here, the time of removal) can create or destroy diversity." *Id.* at 151 (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 574-75 (2004); *Conolly v. Taylor*, 27 U.S. (2 Pet.) 556, 565, 7 L. Ed. 518 (1829). Further, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### III. DISCUSSION

Relators move to remand this action to the Superior Court of the Virgin Islands based upon three separate grounds: the removal was untimely, the notice of removal is defective because Citadel failed to attach a copy of the complaint to the notice, and lack of subject matter jurisdiction.

### A. Timeliness of Removal

Relators argue that Citadel's removal of this matter was untimely under 28 U.S.C. § 1446(b). Mot. at 2. As such, Relators argue, the Court must remand this matter to the Superior Court of the Virgin Islands.

Significantly, Section 1446(b) provides:

The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon

> the defendant if such initial pleading has then been filed in court and is not
> required to be served on the defendant, whichever period is shorter.

28 U.S.C. 1446(b)(1). Thus, courts have held that "proper service of process, or a valid waiver, is required for the thirty[-]day clock to begin to run on removal rights." *Aardvark Event Logistics, Inc. v. Bobcar Media, LLC*, Civil Action No. 16-5873, 2016 U.S. Dist. LEXIS 176425, at *6 (E.D. Pa. Dec. 21, 2016) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)); *see also, e.g., Smith v. Twin Express, Inc.*, Criminal No. 07-1400, 2007 U.S. Dist. LEXIS 91652, at *4-5 (W.D. Pa. Dec. 16, 2007) (where the court quotes *Murphy Bros.*, stating, "It is well-established that mere receipt of a 'courtesy copy' of a filed complaint by the defendant does not trigger the time to remove the case. Rather, 'a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, through service or otherwise,' after and apart from service of the summons, ***but not by mere receipt of the complaint unattended by any formal service***'" (quoting *Murphy Bros., Inc.*, 526 U.S. at 347-48 (emphasis added by the *Smith* court))). Further, "the party asserting the validity of service bears the burden of proof on that issue." *Grand Ent. Grp. v. Star Media Sales*, 988 F. 2d 476, 488 (3d Cir. 1993) (citing 4A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1083 (1987)).

Here, Relators claim that Citadel was served by sending a copy of the summons and complaint to Citadel's registered agent, Joshua Fouquet, in Louisiana, on July 8, 2022. Mot. at 2, ¶ 1. *See also* ECF Nos. 5-1, 5-2. Relators must show that the purported service of Citadel was valid under either Virgin Islands law or Louisiana law. *See, e.g., Rich v. Witt O'Brien's, LLC*, Case No. 1:19-cv-00022, 2021 U.S. Dist. LEXIS 134913 at *8 (D.V.I. July 20, 2021) (where this Court, considering a motion to remand, states, "Here, Rich asserts that WOB was served on April 12, 2019, in Houston, Texas. As such, Rich must prove that the purported service of WOB was valid under either Virgin Islands law or Texas law.")

In the Virgin Islands, service of process is governed by Virgin Islands Rule of Civil Procedure 4. Rule 4 provides in pertinent part:

> (f) Where 5 V.I.C. § 4903 or other applicable law provides for the assertion of
> personal jurisdiction over a person located outside the Virgin Islands, the
> provisions and procedures of Title 5 V.I.C. Chapter 503 shall be followed

including, but not limited to, the procedures for service and the filing of proof of service set forth in 5 V.I.C. § 4911. . . .

(h) Unless law of the Virgin Islands provides otherwise or the defendant waives service, . . .

    (2) a domestic or foreign limited liability company, may be served:

        (A) in the Virgin Islands:

            (i) in the manner prescribed by Rule 4(e) for serving an individual; or

            (ii) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent; or

            (iii) by delivering a copy of the summons and of the complaint to any other agent authorized by appointment or by law to receive service of process and -- if the agent is one authorized by statute and the statute so requires -- by also mailing a copy of the summons and complaint to the defendant; or

        (B) at a place not within the Virgin Islands, in any manner prescribed by Rule 4(f) for serving an individual.

V.I.R.Civ. P. 4(f), (h). Referenced in the said rule, Section 4911 of Title 5 of the Virgin Islands Code provides, in relevant part:

(a) [w]hen the law of this territory authorizes service outside this territory, the service, when reasonably calculated to give actual notice, may be made:

    (1) by personal delivery in the manner prescribed for service within this territory;

    (2) in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction;

    (3) by any form of mail addressed to the person to be served and requiring a signed receipt;

    (4) as directed by the foreign authority in response to a letter rogatory; or

(5) as directed by the court.

(b) Proof of service outside this territory may be made by affidavit of the individual who made the service or in the manner prescribed by the law of this territory, the order pursuant to which the service is made, or the law of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction. When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court.

5 V.I.C. § 4911. A close reading of the statute reveals that, while the statute allows service by mail outside the territory, the statute also requires that the receipt be signed by the addressee: "When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court." *Id.* at § 4911(b).

Relators declare that they sent a copy of the summons and complaint to Citadel's registered agent, Joshua Fouquet. Mot. at 2, ¶ 1, ECF No. 5-2. The return receipt, however, appears to bear the signature "Ashley Johnson." ECF No. 5-1. Citadel states that Ashley Johnson is not an employee or agent of Citadel. Opp'n at 3, ¶ 11, and ECF No. 18-3 at 2, ¶ 10. Relators offer no evidence regarding the relationship between the person who signed the receipt and Joshua Fouquet or that "Ashley Johnson" signed, or was authorized to sign, on behalf of Joshua Fouquet. Thus, Relators have failed to present satisfactory evidence of personal delivery to Joshua Fouquet. *See In re Catalyst Third-Party Litigation*, 67 V.I. 3, 8 (Super. Ct. 2015) (where the Court found insufficient service in similar circumstances, i.e., that no evidence was presented that the person who signed the receipt signed "on behalf of the addressee"). Consequently, the Court finds that Relators' attempted service upon Citadel by mail pursuant to V.I.R. Civ. P. 4 and 5 V.I.C. § 4911 was ineffective.[3]

---

[3] Citadel also notes that:

"[u]nder the VIFCA, the Complaint must be filed under seal, and "[n]o service may be made on the defendant until after the complaint is unsealed." 33 V.I.C. §3504(b)(2). Section 3504(b)(8) further provides, "The defendant is not required to respond to any complaint filed under this section until 21 days after the complaint is unsealed and served upon the defendant pursuant to the applicable rules of the Superior Court."

In Louisiana, "[s]ervice of citation or other process on a domestic or foreign corporation is made by personal service on any one of its agents for service of process." La. Code Civ. P. art. 1261. If "[s]ervice of process directed to a corporate defendant and made on one other than the person authorized to accept service is illegal and without effect." *Southern Pipe & Supply Co. v. Lopez*, 17-1547, p. 4 (La. App. 1st Cir. 6/21/18), 253 So. 3d 185, 188 (citing *State v. Kee Food, Inc.* 17-0127, p. 8 (La. App. 1st Cir. 9/21/17), 232 So. 3d 29, 34, *writ denied,* 17-1780 (La. 12/5/17), 231 So. 3d 632.). In addition, Louisiana law provides that "[p]ersonal service is made when a proper officer tenders citation and other process to the person to be served" and that "[s]ervice shall be made by the sheriff of the parish where service is to be made or of the parish where the action is pending." *Southern Pipe & Supply*, 17-1547, p. 4, 253 So. 3d 185 at 188 (citing La. Code Civ. P. art. 1232 and La. Code Civ. P. art. 1291). Relators do not allege nor provide proof of personal service by the sheriff or other authorized officer upon Citadel in Louisiana. Thus, the Court finds that service of process upon Citadel was not effectuated under Louisiana law.

Because the Court finds that Relators did not effectuate proper service upon Citadel, the 30-day time limit for Citadel to remove this case did not begin to run until Citadel entered its appearance in the Superior Court of the Virgin Islands on August 12, 2022, the same day that Citadel removed this matter to this Court. *See* 5 V.I.C. § 115 ("A voluntary appearance of the defendant shall be equivalent to personal service of the summons upon him."). Citadel removed this matter on the same day that it was deemed served. Consequently, the Court concludes that Citadel's removal of this matter was timely.[4]

### B. Defective Notice -- Failure to File a Copy of the Complaint

---

Opp'n at 6-7. Citadel contends that the "service" alleged by Relators by mail on July 8, 2022, was made prior to the unsealing of the Superior Court proceeding, and, therefore, was a legal nullity and ineffective under the VIFCA. *Id.* at 7. The Court agrees that this violation also constitutes grounds for finding that Relators failed to effectuate proper service upon Citadel.

[4] Additionally, Citadel states that it "received the summons and Complaint by mail on July 13, 2022, and this notice is timely as it is filed within 30 days of Citadel's receipt of the Complaint as required by 28 U.S.C. §1446(a)(1)." ECF No.1 at 5, ¶ 18. Consequently, even if the summons and complaint that were received by Citadel by mail constituted proper service and such service did not violate the VIFCA, Citadel filed its notice of removal with the allotted 30-days.

Relators allege that "CITADEL [sic] failed to attach 'process, pleadings[,] and orders served upon defendants' to its Notice of Removal, contrary to the requirements of 28 U.S. Code § 1446(a)." Mot. at 2, ¶ 3. Relators correctly quote the statute. The Court reiterates that the statute provides that the notice include a copy of pleadings *served* upon the defendant. The Court has found in the preceding section that the complaint was not properly served upon Citadel. Thus, the Court finds no violation of Section 1446(a).

Moreover, the Court has noted herein Citadel's citation to the Virgin Islands False Claims Act which specifically provides: "A complaint filed by a qui tam plaintiff under this subsection must be filed in the Superior Court *in camera*, and subject to paragraph (5), may remain under seal up to 60 days. No service may be made on the defendant until after the complaint is unsealed." 33 V.I.C. § 3504(b)(2). Citadel states that the matter was still under seal as of the date it filed its notice of removal. Notice at 3; Opp'n at 10. Thus, it contends that filing a copy of the complaint with its notice of removal would have been a violation of that seal. Opp'n at 10. The Court agrees with this assessment. Therefore, the Court finds that the subsequent filing of a copy of the Complaint with Citadel's opposition to the motion to remand, after the Superior Court unsealed the matter, cured whatever deficiency, if any, of Citadel's notice of removal.

### C. Subject Matter Jurisdiction

Relators' motion to remand asserts that the Court lacks subject-matter jurisdiction over this matter. Citadel contends that this action falls within the Court's diversity jurisdiction and that the Court also may exercise subject matter jurisdiction based upon federal question.

### 1. Complete Diversity between the Parties

The diversity statute, 28 U.S.C. § 1332, provides, in pertinent part, that:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

   (1) citizens of different States; . . .

(c) For the purposes of this section and section 1441 of this title—

> (1) a corporation shall be deemed to be a citizen of every State and foreign
> state by which it has been incorporated and of the State or foreign state
> where it has its principal place of business . . . .

28 U.S.C. § 1332(a) and (c). Diversity jurisdiction "requir[es] 'complete diversity between all plaintiffs and all defendants' . . . ." *Lincoln Benefit Life Co. v. AEI Life*, LLC, 800 F. 3d 99, 101 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)). "This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life*, 800 F. 3d at 101 (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F. 3d 412, 419 (3d Cir. 2010)).

"[A] limited liability company, as an unincorporated business entity, should be treated as a partnership for purposes of establishing citizenship." *Zambelli Fireworks Mfg. Co.*, 592 F. 3d at 420 (3d Cir. 2010). "Partnerships and other unincorporated associations . . . are not considered 'citizens' as that term is used in the diversity statute." *Swiger v. Allegheny Energy, Inc.*, 540 F. 3d 179, 182 (3d Cir. 2008) (citing *Carden v. Arkoma Associates*, 494 U.S. 185, 187–92 (1990)). When determining the citizenship of unincorporated associations, "courts . . . look to the citizenship of all the . . . members of . . . [the] unincorporated association[] to determine whether the federal district court has diversity jurisdiction." *Swiger*, 540 F. 3d at 182 (citations omitted). "In the context of partnerships, the complete diversity requirement demands that all partners be diverse from all parties on the opposing side." *Id.* at 183. Significantly, "as with partnerships, where an LLC has, as one of its members, another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC." *Zambelli Fireworks Mfg. Co.*, 592 F. 3d at 420 (citation omitted).

A government entity, however, has no citizenship for the purpose of determining diversity jurisdiction. *See Daley v. Dowdye*, 571 F. App'x 128, 129 (3d Cir. 2014) ("[A] Territory of the United States, which is considered a state pursuant to § 1332(d), [] cannot be considered a citizen for purposes of establishing diversity of citizenship jurisdiction.") (quoting *Brown v. Francis*, 75 F. 3d 860, 865, 33 V.I. 385 (3d Cir. 1996)); *accord Agullard v. Principal Life Ins. Co.*, 685 F. Supp. 2d 947, 952 (D. Ariz. 2010) ("[S]tates and state agencies or instrumentalities have no state 'citizenship' for purposes of diversity jurisdiction.")

(citing *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 849 F. 2d 1197, 1200 (9th Cir. 1988)).

Here, neither the citizenship of Defendants nor the amount in controversy is disputed.[5] Relators bases its claim that diversity of citizenship does not exist upon the fact that Citadel is a citizen of Louisiana[6] and one of the named Relators also is a citizen of Louisiana. Mot. at 2, ¶ 4. Relators then baldly assert, without citation to legal authority or other support, that "complete diversity of citizenship, for purposes of jurisdiction, is to be determined as between the Plaintiff-Relators and the Defendants." Mot. at 2-3, ¶ 4. Citadel argues, on the other hand, that, for diversity purposes, the Court looks not to the named parties, but must determine the real parties in interest. Opp'n at 10-11. The Court agrees with Citadel.

### a. Real parties in interest

It is axiomatic that "federal civil actions 'must be prosecuted in the name of the real party in interest.' Fed. R. Civ. P. 17(a)(1). For purposes of determining whether complete diversity exists, a court generally 'must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'" *Miller v. Native Link Constr., LLC.*, Civil Action No. 15-1605, 2017 U.S. Dist. LEXIS 131021, at *18 (W.D. Pa. Aug. 17, 2017) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980)). *See also New Mexico ex rel. Nat'l Educ. Ass'n of N.M., Inc. v. Austin Capital Mgmt.*, 671 F. Supp. 2d 1248, 1250-51 (D.N.M. 2009) ("In diversity-jurisdiction cases, the citizenship that matters is not that of the named parties; instead, courts have long looked to the citizenship of the real parties in interest.") (citations omitted)). As many courts have found, the fact that the United States Supreme Court has held that the United States is a real party in interest in *qui tam* actions, even when it has chosen not to intervene, is instructive and have similarly found, in the *qui tam* context, that a state is a real party in interest even if it does not intervene. *See, e.g.,*

---

[5] "If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a) [28 USCS § 1332(a)], the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy . . . ." 28 U.S.C. § 1446(c)(2). The sum demanded in Relators' complaint exceeds the threshold amount in controversy required for diversity jurisdiction.

[6] Despite the fact that the citizenship of Defendants is undisputed, it is incumbent upon the Court to determine for itself that complete diversity has been established and, thus, will address the citizenship of Defendants after resolving the issue of the citizenship of the plaintiffs.

*Indiana ex rel. Harmeyer v. The Kroger Co.*, No. 1:17-cv-00538-JMS-DML, 2017 U.S. Dist. LEXIS 90430, at *6-9; *New Mexico ex rel. National Educ. Ass'n of N.M., Inc.*, 671 F. Supp. 2d at 1250-51 (D.N.M. 2009); *State of California ex rel. Services Disabled Veterans Telecommunications v. MCI Telecommunications Corp.*, No. 97-17309, 1999 U.S. App. LEXIS 10913, at *2-3 (9th Cir. May 24, 1999).

> The *Indian ex rel. Harmeyer* court explains:
>
> In the *qui tam* context, the United States Supreme Court has held that the United States is a real party in interest, even when it has not intervened. In *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 129 S. Ct. 2230, 173 L. Ed. 2d 1255 (2009), the relators in a *qui tam* action argued that the 60-day deadline for filing a notice of appeal under Fed. R. App. P. 4(a)(1)(A)-(B) when "the United States or an officer or agency thereof is a party" applied, even though the United States had declined to intervene in the action. The Supreme Court recognized a clear distinction between "party" and "real party in interest," finding that while the United States was not a "party" to the case because it had declined to intervene, it was still a "real party in interest." *Id.* at 935 ("the United States' status as a 'real party in interest' in a *qui tam* action does not automatically convert it into a 'party.' The phrase, 'real party in interest,' is a term of art utilized in federal law to refer to an actor with a substantive right whose interests may be represented in litigation by another"). . . . Although these cases involved the United States as a real party in interest, and not a state, they are instructive. *See New Mexico ex rel. National Educ. Ass'n of New Mexico, Inc. v. Austin Capital Management Ltd.*, 671 F.Supp.2d 1248, 1251 (D. N.M. 2009) ("The status of the United States in the false-claims-act *qui tam* action at stake in *Eisenstein* was the same as the State's status in this litigation; both potentially stand to benefit financially from the *qui tam* lawsuit even if they have declined to intervene in the action. Therefore, the Supreme Court's acknowledgement of the real-party-in-interest status of the United States in a *qui tam* lawsuit is persuasive authority regarding the State's status in this case"). Moreover, while it does not appear that the Seventh Circuit has dealt with the specific issue of whether a state is a real party in interest in a *qui tam* action for purposes of whether there is diversity jurisdiction, other federal court have done so and have answered affirmatively. . . . The Court finds that the State of Indiana is a real party in interest to this litigation, despite the fact that it has declined to intervene, and so its citizenship must be considered in determining whether diversity jurisdiction exists here. Defendants' arguments to the contrary are unavailing.

*Indiana ex rel. Harmeyer*, 2017 U.S. Dist. LEXIS 90430, at *6-9 (citations omitted). The Court finds this reasoning sound and adopts it here. Thus, notwithstanding Relators' position, the

Court finds that here, in the matter at bar, Relators are not the real parties in interest and, thus, their citizenship is not relevant to the issue of diversity.[7] *See, e.g., United States ex rel. Charte v. American Tutor, Inc.*, 934 F. 3d 346, 353 (3d Cir. 2019) ("First, *qui tam* claims belong to the Government, not to relators."); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F. 3d 89, 93 (2d Cir. 2008) (where the court found that relators could not proceed *pro se* under 28 U.S.C. § 1654, stating, "While relators indisputably have a stake in the outcome of False Claims Act *qui tam* cases that they initiate, 'the Government remains the real party in interest in any such action.' . . . In short, while the False Claims Act permits relators to control the False Claims Act litigation, the claim itself belongs to the United States. . . . Accordingly, as the United States 'remains the real party in interest' in *qui tam* actions, . . . the case, albeit controlled and litigated by the relator, is not the relator's 'own case'" (quoting and citing *Minotti v. Lensink*, 895 F. 2d 100, 104 (2d Cir. 1990) (other citations omitted))); *United States ex rel. Mohajer*, 525 F. Supp. 3d 447, 462 (S.D.N.Y. 2021) ("For diversity purposes, the Utah Relators' citizenship is irrelevant, since they are not the real parties in interest." (citations omitted)).

## b. Government of the Virgin Islands and/or VIHFA

Because this action is brought as a *qui tam* action under the Virgin Islands False Claims Act, the Government of the Virgin Islands and/or the VIHFA is the real party in interest. The Court now determines whether both the Government and the VIHFA are real parties in interest or whether just one of them should be considered the real party in interest.

---

[7] In their Reply, Relators state, "In qui tam actions, for diversity purposes, courts look to the citizenship of the defendants as compared to the relators, and not to the citizenship of the government Plaintiff." Rep. at 2, ¶ 2. Relators cite "*Illinois ex rel. Strakusek v. Omnicare, Inc.*, No. 19 C 7247, *7 (N.D. Ill. 2021" [sic] in support of their position. Rep. at 2, ¶ 2. The Court has noted herein that Relators' reply was untimely filed. As such, the Court may disregard it. The Court addresses this statement to note that Relators' reliance upon *Strakusek* is misplaced. First, given the incomplete citation, the Court surmises that Relators mean to cite the opinion found at *Illinois ex rel. Strakusek v. Omnicare, Inc.*, No. 19 C 7247, 2021 U.S. Dist. LEXIS 17384 (N.D. Ill. Jan. 29, 2021). Second, nothing at *7 of that opinion mentions diversity jurisdiction or citizenship for determining diversity. Third, the case does not address citizenship of relators or the government for purposes of diversity jurisdiction; the issue presented to the court is whether the doctrine of *res judicata* is applicable when a relator brings similar *qui tam* suits in the name of different governments or sovereigns. 2021 U.S. Dist. LEXIS 17384, at *11-13. The *Strakusek* court determined that for *res judicata* purposes the court looks to the "identity of parties." *Id.* at 11. The "identity of parties" element of *res judicata* is completely different and distinguishable from the real party in interest inquiry for diversity of citizenship purposes. Thus, the Court concludes that Relators are incorrect and agrees with Citadel and the caselaw holding that in *qui tam* actions, especially false claims actions, the real parties in interest are not the relators.

As previously noted, "[s]tates and state agencies or instrumentalities have no state 'citizenship' for purposes of diversity jurisdiction." *Agullard v. Principal Life Ins. Co.*, 685 F. Supp. 2d 947, 952 (D. Ariz. 2010) (citing *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 849 F.2d 1197, 1200 (9th Cir. 1988)). Thus, if the Government of the Virgin Islands is a real party in interest and/or the VIHFA is merely an instrumentality or alter ego of the Government, then, diversity jurisdiction does not lie.[8]

Whether the VIHFA is an arm of the Government of the Virgin Islands is a legal question. *See generally Doolin v. Kasin*, 424 Fed. App'x 106 (3d Cir. 2011). To establish whether an entity is a state's alter ego for diversity purposes, the Third Circuit employs the same test used to evaluate an entity's entitlement to Eleventh Amendment immunity. *Id.* at 109 ("In determining whether alter ego status is appropriate, a court must perform the same analysis as is required to determine Eleventh Amendment immunity." (citing *Blake v. Kline*, 612 F. 2d 718, 726 & n.16 (3d Cir. 1979)); *Gibson-Homans Co. v. New Jersey Transit Corp.*, 560 F. Supp. 110, 112 (D.N.J. 1982) ("In determining whether or not New Jersey Turnpike is the alter ego of the State for diversity purposes, the Court must perform the same analysis required in order to determine whether New Jersey Transit is immune from suit under the Eleventh Amendment." (citing *Blake v. Kline*, 612 F. 2d 718, 726 & n.16 (3d Cir. 1979)).

The Third Circuit articulated a three-factor test to evaluate whether an entity is an arm of the state entitled to Eleventh Amendment Immunity in *Fitchik v. New Jersey Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989). Utilizing this test, a court weighs

> (1) "whether the state treasury is legally responsible for an adverse judgment" against the entity (the "funding factor"), (2) "whether the entity is treated as an arm of the State under state case law and statutes" (the "status factor"), and (3) "whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control" (the "autonomy factor").

---

[8] For purposes of the VIFCA, the VIHFA is included in the definition of *Government* or *Government of the Virgin Islands*. 33 V.I.C. § 3502(3) (where the definition of "'Government of the Virgin Islands' or 'Government'" includes the executive, legislative, and judicial branches of the Government of the Virgin Islands, agencies, authorities and instrumentalities of the Government of the Virgin Islands, and governing boards and commissions of the Government of the Virgin Islands."). Thus, even if the Court finds that the VIHFA is not the alter ego or an arm of the Government, it may still be the real party in interest for the purpose of a *qui tam* action brought under the VIFCA.

*Jones v. PI Kappa Alpha Int'l Fraternity, Inc.*, 765 Fed. App'x 802, 806 & n.20 (quoting *Maliandi v. Montclair State Univ.*, 845 F. 3d 77, 83 (3d Cir. 2016) (citing *Fitchik*, 873 F. 2d at 659))). A court then must balance these factors, affording them equal weight. *See Karns v. Shanahan*, 879 F. 3d 504, 513-15 (3d Cir. 2018) (emphasizing that "none of the three *Fitchik* factors is 'predominant'" (quoting *Cooper v. SEPTA*, 548 F. 3d 296, 301 (3d Cir. 2008))). The Court will address each factor in turn.

### i. The Funding Factor

The first factor asks whether state money would be used to cover a legal judgment against the entity in question. *Patterson v. Pennsylvania Liquor Control Bd.,* 915 F. 3d 945, 950 (3d Cir. 2019) (citing *Fitchik*, 873 F. 3d at 659). The Third Circuit has articulated three subfactors relevant to the assessment of the first *Fitchik* factor: "(1) a state's legal obligation to pay a money judgment entered against the entity; (2) whether the agency has money to satisfy the judgment; and (3) whether there are specific statutory provisions that immunize the state from liability for money judgments." *Patterson*, 915 F. 3d at 951 (citing *Fitchik*, 873 F.2d at 659). While this analysis is not as straightforward given the VIHFA's status as a plaintiff, rather than a defendant, the Court still finds the source of the money factor to be indicative of the VIHFA's relationship with the Government, and, consequently, its alter-ego status. *See New Jersey Dep't of Env't Prot. v. Nestle USA, Inc.*, Civil No. 06-4025 (FLW), 2007 WL 703539, at *6 n.2 (D.N.J. Mar. 2, 2007) ("[T]he first factor is not helpful in this analysis because it is more suited to litigation in which an agency is a defendant in an action.").

#### a. The Virgin Islands' legal obligation to pay a money judgment

A court evaluating the funding factor must examine the state's legal *obligation* to indemnify an entity in case of an adverse legal judgment against that entity. *See Patterson*, 915 F. 3d at 951. The Third Circuit has "consistently rejected the argument that a State's voluntary choice to pay a state-affiliated entity's liabilities . . . favors Eleventh Amendment immunity." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 87 (3d Cir. 2016).

The Third Circuit's analysis in *Maliandi* is instructive. In that case, the Court was evaluating whether Montclair State University (Montclair), then governed as a state college

by N.J.S.A § 18A:64-1 *et seq.*, was entitled to immunity as an arm of the state. The Court stressed that a state's overarching legal liability, or lack thereof, for an entity's debts is the "key factor" in a court's funding evaluation.[9] *Maliandi*, 845 F. 3d*.* at 87 (quoting *Febres v. Camden Bd. Of Educ.*, 445 F. 3d 227, 236 (3d Cir. 2006)). As the Third Circuit found with respect to Montclair, the Court is aware of no all-encompassing legal obligation that the Government of the Virgin Islands pay money judgments against the VIHFA.

### b. Alternative sources of money

The second subfactor of the funding analysis asks whether VIHFA has sufficient non-state appropriated funds to cover an adverse judgment against it. *Maliandi*, 845 F. 3d at 88. Consideration of alternative sources of funding

> [n]ecessarily involves a review of the percentage of funds a given entity receives from the State, but there is no hard-and-fast rule about how much funding from the State is enough to trigger immunity, and, in the wake of the Supreme Court's decision in *Doe*, the question of *legal liability* . . . remains paramount.

*Id.* (citing *Cooper v. SEPTA*, 548 F. 3d 296, 303 (3d Cir. 2008); *accord Fitchik*, 873 F. 2d at 660 ("[T]he fact that an entity derives some of its income from the state does not mean that it is entitled to partake of the state's immunity. . . . What is significant is whether the money that pays the fine will come from the state treasury rather than the agency's funds . . . .")).

Again, the Court's review of the Virgin Islands Code reveals no substantial legislative allocation of funds from the Government of the Virgin Islands to VIHFA.[10] To the contrary, the VIHFA has numerous sources of revenue including receiving and administering federal grants; acquiring, leasing, and selling property; charging and collecting fees; borrowing money and issuing bonds. 21 V.I.C. § 103 *passim*.

---

[9] While the Third Circuit found the funding factor weighed against immunity, the Court ultimately concluded that, on balance, the *Fitchik* factors counselled in favor of a finding that Montclair was entitled to immunity.

[10] Various statutes allocate Government funds to be administered by the VIHFA. For example, Title 33, Section 3074 of the Virgin Islands Code establishes a Housing Trust Fund, part of which is constituted of "transfers of monies appropriated to the Department or VIHFA by the Legislature for low, affordable or moderate income housing related projects and approved by the Director of Budget . . . . " 33 V.I.C. § 3074(e)(3). *See also* 29 V.I.C. § 191h-3, establishing a Housing Insurance Fund to be funded from the Moderate Income Housing Fund established by 33 V.I.C. § 3027.

According to the Complaint and the Prime Contract between the VIHFA and AECOM, the contracts at issue were entered into as part of the EHRVI/STEP program funded by FEMA. Compl. at 2-3; ECF No. 5-3 at 1. The Complaint also alleges that Defendants were paid FEMA funds from the VIHFA. Compl. at ¶ 39. Moreover, the Prime Contract also contains, for example, these provisions: 1.) in the Section VII, titled "Payment Process" -- "Payment of invoices must be approved by the Program Manager of the EHRVI program or its designee. The VIHFA will make initial payments within 15 business days after approval of the FEMA funding. Thereafter, payments shall be made 15 days after receipt of the invoice" (ECF No. 5-3 at 9, subparagraph C), and 2.) in Section VII, titled "Term of Contract; Termination or Suspension of Contract" -- "[T]he continuation of this Contract is contingent upon the appropriation and release of funds by FEMA to fulfill the requirements of this Contract" (ECF No. 5-3 at 10, subparagraph D).

The Court concludes from these facts that the treasury of the Virgin Islands would not be legally responsible for any adverse judgment if it were Citadel bringing claims against VIHFA upon the contracts at issue, nor would the Government benefit from the successful prosecution of this purported *qui tam* action – any benefit would accrue to the VIHFA, the entity responsible for administering the FEMA-funded program. *See, e.g., Greaux v. Government of the Virgin Islands*, 14 V.I. 160, 167 (Terr. Ct. 1977) (where the court held that "the Legislature intended to and did, in fact, create an independent instrumentality in the Virgin Islands Housing Authority, which Authority upon proper proof is liable for its negligent acts or omissions. However, in seeking satisfaction for any claims flowing from such negligent acts, plaintiffs can look to neither the property nor funds of the Government of the Virgin Islands").

Further, there is no indication of continued state ownership of appropriations once allocated to the VIHFA. As the Third Circuit has held, "once deposited in the [entity]'s accounts, these funds belong to the [entity]. If then used to pay a judgment, we can say only that the judgment was satisfied with the [entity]'s monies." *Febres*, 445 F. 3d at 234. The Court therefore concludes that this second subfactor weighs heavily against VIHFA being an arm of the Government.

### c. State immunity from liability

"The third subfactor stands for the simple proposition that where the State has expressly immunized itself from the entity's liabilities, it thereby indicates the entity is not an arm of the State . . . ." *Maliandi*, 845 F. 3d at 90. Regarding the VIHFA, the Government of the Virgin Islands does not enjoy "sweeping statutory immunity" from liability on judgments entered against the VIHFA. *Id.* However, the VIHFA is authorized to enter into contracts "with any person, firm, corporation, association, agency, governmental agency or other entity, and all Virgin Islands governmental agencies are hereby authorized to enter into contracts . . . with the Authority." 21 V.I.C. § 103(k). If other governmental agencies may and do enter into contracts with the VIHFA[11] and are treated as any other party to a contract with the VIHFA, it would seem, by logical extension, that the Government would not be liable for any judgment entered against VIHFA for its default or breach of the contract either with a governmental agency or any other party.[12] In addition, 21 V.I.C. § 191d(a)(2) provides that, for the purposes of that subchapter, at least, "[n]o indebtedness shall be incurred which may be a general obligation of the Government . . . ." This subfactor, then, weighs against considering VIHFA an arm of the Government.

In sum, each of the three funding subfactors tip against treating the VIHFA as an arm of the Virgin Islands Government. The Court therefore concludes that the funding factor counsels against a finding that the VIHFA is an alter ego of the Government of the Virgin Islands.

### ii. The Status Factor

The second *Fitchik* factor calls for an examination of "whether the entity is treated as an arm of the State under state case law and statutes." *Id.* at 83. Relevant subfactors include: "(1) how the law treats the agency generally; (2) whether the agency is separately

---

[11] A contract currently exists between VIHFA and the Office of the Lieutenant Governor for access to certain data and for which VIHFA is paying the Lieutenant Governor's office. *See* Contract for Geospatial Information Data Access, VI Office of Lt Gov Office - Geospacial Information Data Access Contract.pdf (vihfa.gov), accessed October 28, 2022.

[12] The Court observes, however, that the VIHFA is treated as part and parcel of the Government of the Virgin Islands for purposes of the Virgin Islands Tort Claims Act. *See* 33 V.I.C. § 3401 *et seq*. In properly filed tort claims, the Government has limited its liability in the amount of $25,000.00. 33 V.I.C. § 3411. *See also* 21 V.I.C. § 112(a) and 29 V.I.C. § 87(a) (limiting judgments against the VIHFA in actions based upon negligence to $25,000.00).

incorporated; (3) whether the agency can sue and be sued in its own right; (4) and whether it is immune from state taxation." *Patterson*, 915 F. 3d at 953 (citing *Fitchik*, 873 F. 2d at 659).

### a. VIHFA's general treatment under Virgin Islands law

When analyzing how state law treats an entity generally, courts take stock of: "(1) explicit statutory indications about how an entity should be regarded; (2) case law from the state courts—especially the state supreme court—regarding an entity's immunity or status as an arm of the State; and (3) whether the entity is subject to laws for which the State itself has waived its own immunity (such as state tort claims acts)." *Bradley v. West Chester Univ.*, 880 F. 3d 643, 655 (3d Cir. 2018) (quoting *Maliandi*, 845 F. 3d at 91). Here, the evidence points toward the VIHFA's treatment as an arm of the Government.

The Court is unable to locate any Virgin Islands caselaw explicitly determining VIHFA's status. The authorizing statute establishes the VIHFA as a "public corporation and autonomous government instrumentality of the Government of the Virgin Islands . . . ." 21 V.I.C. § 103. However, in many instances, statutes state that the Executive Director of the VIHFA may act "with the approval of the Governor, and in the name of the Government of the Virgin Islands . . . ." *See, e.g.*, 21 V.I.C. § 2(a), 21 V.I.C. § 7, 29 V.I.C. § 191d(a). In addition, for purposes of Chapter 1 of Title 29 of the Virgin Islands Code, "All activities and operations of the Authority under this chapter are declared to be public governmental activities and, except as may be otherwise provided in this chapter, the Authority shall be entitled to all the privileges and immunities attributable to the Government of the United States Virgin Islands." 29 V.I.C. § 187.[13] Lastly, as noted *supra*, the VIHFA is treated as part of the Government of the Virgin Islands for purposes of the Virgin Islands Tort Claims Act. *See* 33 V.I.C. § 3401 *et seq*. Therefore, this subfactor favors considering the VIHFA to be an arm of the Government.

### b. Incorporation, ability to sue and be sued, & immunity from taxation

First, as the *Maliandi* court states, "[s]eparate incorporation disassociates an entity from its State and thus weakens its claim to Eleventh Amendment immunity." *Maliandi*, 845

---

[13] The term *Authority* here refers to either the Virgin Islands Housing Authority or the VIHFA. 29 V.I.C. § 2(a).

F. 3d at 93. Although called a "public corporation," the VIHFA does not appear to be separately incorporated. In addition, the VIHFA is run by a board of directors with some members appointed by the Governor of the Virgin Islands, with the advice and consent of the Virgin Islands Legislature. 21 V.I.C. § 103. Moreover, some of the property it acquires, holds, leases, sells, or mortgages are done so in the name of the Government or to protect the interest of the Government. *See, e.g.,* 21 V.I.C. § 103(v)(i). Thus, this part of this subfactor weighs in favor of finding the VIHFA to be an arm or alter ego of the Government.

Second, "[a]n entity is more likely to be an arm of the State . . .if it lacks the ability to sue and be sued in its own name." *Maliandi*, 845 F. 3d at 94. As a "public corporation and autonomous governmental instrumentality" the VIHFA is authorized to, among many other things,

> (a) to hire such persons or contract with such institutions as the Authority deems necessary to administer the decisions of the Authority made pursuant to this chapter; . . .
>
> (k) make, enter into and enforce all contracts, including contracts for the servicing of loans necessary, convenient or desirable for the performance of the powers under this chapter, including contracts with any person, firm, corporation, association, agency, governmental agency or other entity, and all Virgin Islands governmental agencies are hereby authorized to enter into contracts, and otherwise cooperate with the Authority to facilitate the purposes of this chapter; . . .
>
> (q) to establish such funds and accounts as may be necessary for furtherance of the purposes of this chapter, and to retain certified public accountants to audit the books maintained by the Authority with respect to this chapter and prepare financial statements on a regular and timely basis; . . .
>
> (s) to sue and be sued with respect to any action taken pursuant to powers and authority granted by this chapter; . . . .

21 V.I.C. § 103(a), (k), (s).[14] As the then-Territorial Court of the Virgin Islands held in *Greaux v. Government of the Virgin Islands*, 14 V.I. 160 (Terr. Ct. 1977), regarding another Virgin Islands governmental agency,

---

[14] Section 85 of Title 29 of the Virgin Islands Code contains powers of the VIHFA for the purposes of that chapter (Chapter 1), including the power to:

> [i]t is clear that the Virgin Islands Housing Authority resulted in the establishment of a separate and distinct legal entity, one liable on its debts and responsible for its torts, to the exclusion of any liability on the part of the Government. Its amenability to suit for personal injuries operates to relieve the Government of any potential liability it may have incurred otherwise.

*Id.* at 166.[15]

Here, the VIHFA is the party that executed the Prime Contract with AECOM and is the Territory's appointed representative to implement the FEMA STEP program. *See* Contract for Construction Repair Services (ECF No. 5-3) at 1; Compl. at Exhibit A (ECF No. 18-7 at 25). All primary transactions were conducted between AECOM and the VIHFA and all invoices were submitted to the VIHFA. Compl. at ¶¶ 39, 44, 51 (ECF No. 18-7 at 10-12). The statute creating the Authority confers the status of "public corporation." 21 V.I.C. § 103. Thus, not only does Section 103 allow the Authority to "sue and be sued," but also as a "public corporation," Section 1142 of Title 5 of the Virgin Islands Code provides that the VIHFA may

> maintain [a court] action . . . (1) Upon a contract made with such public corporation; (2) Upon a liability prescribed by law in favor of such public corporation; (3) To recover a penalty or forfeiture given to such public corporation; or (4) To recover damages for an injury to the corporate rights or

---

> (2) sue and be sued; . . . (4) enter into and execute contracts and instruments of every kind and nature, necessary or convenient to the exercise of its powers and functions; (6) borrow money from public and private sources, and give such security therefor as may be required; (8) deposit funds in banking institutions which are members of the Federal Deposit Insurance Corporation; (12) sell, lease, exchange, transfer, assign, mortgage, pledge, or otherwise dispose of, or encumber, any real or personal property . . . .

29 V.I.C. § 85. *See also* 21 V.I.C. § 124(a), providing that the VIHFA may "sue and be sued," among other powers, for the purposes of that chapter.

[15] The Virgin Islands Housing Authority authorizing statute provides, in pertinent part:

> The name of the Virgin Islands Housing and Urban Renewal Authority, as heretofore established shall hereafter be "Virgin Islands Housing Authority", and shall continue to be a public body corporate and politic of the Virgin Islands within the Virgin Islands Housing Finance Authority for administrative purposes only. The Virgin Islands Housing Authority shall constitute a "public housing agency" within the meaning of the United States Housing Act of 1937, as amended, and a "local public agency" within the meaning of Title I of the Housing Act of 1949, as amended. The Authority shall have all the powers, rights, duties, privileges, functions, obligations, and status as a public body corporate and politic, prescribed, or provided by this chapter.

29 V.I.C. § 31(a).

property of such public corporation, *id.* at § 1142(a), separate and apart from the Government of the Virgin Islands. Court actions also "may be maintained against any public corporation in the Virgin Islands within the scope of its authority . . . .

5 V.I.C. § 1142(b).

The VIHFA is explicitly granted the ability to sue and be sued by law. 21 V.I.C. § 103(s); 21 V.I.C. § 124(a); 29 V.I.C. § 85(2). Therefore, consideration of this subfactor makes it less likely that VIHFA is an arm of the Government. *See Maliandi*, 845 F. 3d at 94. *See also, e.g., West Indian Co. v. Yacht Haven USVI, LLC*, Case No. 3:20-cv-0011, 2022 U.S. Dist. LEXIS 41629, at *25 (D.V.I. March 9, 2022) ("Since it is indisputable that private corporations have the right to sue and be sued in their name, *see* 13 V.I.C. § 32(2), such power is similarly granted to WICO pursuant to Act No. 5826. Therefore, this factor makes it less likely that WICO is an arm of the Government of the Virgin Islands. *See Maliandi*, 845 F. 3d at 94.").

Third, the fact that the VIHFA is immune from Virgin Islands taxation, 21 V.I.C. § 125, weighs in favor of a finding that it is an arm of the Government. S*ee Karns*, 879 F. 3d at 517; *Maliandi*, 845 F. 3d at 95 (noting the fact that Montclair was immune from state taxes weighed in favor of immunity).

Weighing all the considerations contained in this subfactor, the scale tips slightly in favor of the status of the VIHFA as not an arm of the government.

### c. Other relevant considerations

When evaluating an entity's status under the second *Fitchik* factor, the Third Circuit also looks at "the entity's authority to exercise the power of eminent domain, application of state administrative procedure and civil service laws to the entity, the entity's ability to enter into contracts and make purchases on its own behalf, and whether the entity owns its own real estate." *Karns*, 879 F. 3d at 516 (quoting *Maliandi*, 845 F. 3d at 91).

Regarding these considerations, the VIHFA may, in certain circumstances, exercise eminent domain. *See* 29 V.I.C. § 191d(a)(3) (for purposes of Subchapter IX of Chapter 1 of Title 29 and subject to the approval of the Governor and the Legislature); this weighs in favor of the VIHFA having alter-ego status. *See Maliandi*, 845 F. 3d at 95. However, as the *Maliandi* court cautions, this authority should be taken "with a grain of salt" because some entities not

considered arms of the state also may exercise eminent domain. *Id.* (citing *Fitchik*, 873 F. 2d at 663).

Next, the Court considers whether the Virgin Islands' administrative procedure and civil service laws apply to the VIHFA as "[a]n entity's claim to immunity is stronger if it is subject to a State's administrative procedure and civil service laws." *Maliandi*, 845 F. 3d at 95. The VIHFA is exempt from the Virgin Islands procurement laws and is instead authorized "to hire such persons or contract with such institutions as the Authority deems necessary to administer the decisions of the Authority made pursuant to this chapter" and "to issue payroll checks to its employees and to make any and all deductions related to payroll as is required for the proper administration of its personnel functions . . . ." 21 V.I.C. § 103(a), (w). At the same time, at least some of the VIHFA employees are eligible for government healthcare, *see* 3 V.I.C. § 634(a) ("All persons in service of the Government of the United States Virgin Islands . . . whether elected, appointed, or employed, shall participate in the health insurance plan . . . .), and the VIHFA is required to give an accounting of government funds to the Government. 29 V.I.C. § 183 (which reads, in part, "The Virgin Islands Housing Finance Authority shall make administrative, maintenance and operating expenditures in accordance with an annual budget, and shall account to the Government of the United States Virgin Islands, in accordance with applicable law, for any funds that may have been furnished to it or appropriated to its use by the Legislature, by any political subdivision of the Virgin Islands, or by any other public body, agency, or instrumentality of the Government of the United States Virgin Islands . . . ."). *See Maliandi*, 845 F. 3d at 95 (noting the fact that a "significant subset" of state college employees is subject to New Jersey's civil service laws counsels in favor of immunity). Given these competing elements of this subfactor, the Court finds that this subfactor weighs neutrally.

The Court also considers the VIHFA's ability to enter into contracts, as entities free to contract without government approval or oversight are less likely to be considered arms of the state. *Maliandi*, 845 F. 3d at 95; *Bowers*, 475 F. 3d at 548 (concluding the second *Fitchik* factor weighed in favor of immunity in part because "the University is unable to buy or transfer real estate without the express permission of a State Executive Council"). The VIHFA

is free to enter into some contracts of its own accord, 21 V.I.C. § 103, yet does so through a board consisting of the "Director of the Office of Management and Budget, the Zoning Administrator under Title 29, Section 235, and three individuals who are not employed by the Government of the Virgin Islands, whom the Governor shall appoint with the advice and consent of the Legislature." *Id*. These facts simultaneously cut both for and against the VIHFA's arm of the state status, weighing slightly against such status in the aggregate.

Finally, while some of the real estate managed and owned by the VIHFA is done so on behalf of the Government, the VIHFA may buy, sell, lease, mortgage, and otherwise own real property apart from the Government of the Virgin Islands. *See, e.g.*, 29 V.I.C. § 85.[16] However, the VIHFA, as noted above, does so through a board with some members appointed by the Governor. All things considered, though, this subfactor weighs against finding the VIHFA to be an alter ego of the Government of the Virgin Islands.

The Third Circuit has acknowledged that "the multifaceted nature of the status under state law factor can make it so hopelessly 'checkered' that it does not 'significantly help in determining whether'" an entity is an arm of the state. *Maliandi*, 845 F. 3d at 91 (quoting *Fitchik*, 873 F. 2d at 662). Here, the Court finds that the VIHFA's general treatment under Virgin Islands law and immunity from taxation weigh in favor of finding the VIHFA to be an arm of the Virgin Islands Government. Nonetheless, the VIHFA's ability to sue and be sued in its own name, ability to contract freely, and ability to own and sell real estate weigh heavily against such a finding. One subfactor weighs neutrally. Therefore, the Court finds that, on

---

[16] Among other powers granted by this statute, the VIHFA may

> (10) acquire any real or personal property, or any interest or estate therein, by lease, option, purchase, gift, grant, donation, appropriation, bequest, devise or by the exercise of eminent domain, or otherwise;
> (11) own, hold, improve, clear, or prepare for redevelopment any such property;
> (12) sell, lease, exchange, transfer, assign, mortgage, pledge, or otherwise dispose of, or encumber, any real or personal property, or any interest or estate in such: Provided, however, That no provisions of law with respect to the acquisition, operation or disposition of property by other public agencies shall be applicable to the Authority unless the Legislature shall specifically so state . . . .

29 V.I.C. § 85. It is not stated that these powers are limited, as in other statutes, by approval of the Governor.

balance, the legal status factor weighs against finding the VIHFA to be an arm of the Government of the Virgin Islands.[17]

### iii. Autonomy factor

Title 21, Section 103, of the Virgin Islands Code specifically declares that the VIHFA is an "autonomous governmental instrumentality." *Id.* At the same time, other factors weigh in favor of finding that the VIHFA is not completely autonomous. For example, as related *supra*, the Authority consists of some members who are appointed by the Governor; it must report and provide certain accounting to the Legislature; and, it acts in some instances upon approval of the Governor and in the name of the Government.

While the VIHFA is expected to create a budget, *see* 29 V.I.C. § 183, nothing indicates that it submits such budget to the Virgin Islands Legislature for funding. The accounting to the Legislature required by 29 V.I.C. § 183 is only for funds "furnished to it or appropriated to its use by the Legislature, by any political subdivision of the Virgin Islands, or by any other public body, agency, or instrumentality of the Government of the United States Virgin Islands. *Id.*; s*ee Maliandi*, 845 F. 3d at 89-90 (concluding that because Montclair "may spend state-appropriated funds as it sees fit[,]" the requirement that the school "spend its funds within the general parameters of the State's overall budget appropriations" was a "minimal constraint" and did not indicate continued state ownership of funds allocated to Montclair (citation and internal quotation omitted)). The VIHFA may be subject to certain government oversight laws, but these steps toward transparency hardly rise to the level of an operational constraint. *Cf. Kovats v. Rutgers, The State University*, 822 F. 2d 1303, 1311 (3d Cir. 1987) ("Unlike some state agencies, Rutgers is not required to manage its funds as public moneys, but rather is free to establish accounts and invest and withdraw funds as desired.")

As discussed *supra*, the VIHFA is free to contract with other entities without government approval or administrative procedure, and the Government does not appear to be liable for any debts or obligations incurred. Guided by the analysis and opinions of the Third Circuit in *Maliandi* and *Kovats*, the Court finds that the VIHFA is autonomous from the

---

[17] The Court's conclusion is bolstered by the Virgin Islands then-Territorial Court's finding in *Greaux* that the Virgin Islands Housing Authority is a separate legal entity and not an arm or "alter ego" of the Government the Virgin Islands. 14 V.I. 160 (Terr. Ct. 1977)

Government of the Virgin Islands and that the autonomy factor weighs strongly against the VIHFA being considered an alter ego of the Government.

In sum, taking all three *Fitchik* factors together, the Court determines that the VIHFA should not be treated as the arm or alter ego of the Government of the Virgin Islands. Further, because the contract at issue was entered into by the VIHFA in the administration of federal FEMA funds and the Government of the Virgin Islands is not a party to the contracts underlying Relators' claims, the Court finds that the proper and only party in interest in this purported *qui tam* action is the VIHFA. *See Greaux*, 14 V.I. at 167 (where the court ultimately held that Plaintiff's tort claim properly lay against the Virgin Islands Housing Authority (VIHA) and not the Government of the Virgin Islands. Because the plaintiff in *Greaux* sued only the Government and did not join the VIHA as a defendant, the court dismissed the complaint, with leave to amend to substitute the "proper party defendant"). Thus, for diversity of citizenship purposes, the Court finds that the VIHFA is a citizen of the Virgin Islands and that it, in this purported *qui tam* suit, is the only plaintiff whose citizenship must be considered.

### c. Citizenship of Defendants

Although Relators do not dispute Citadel's claimed citizenship, in the context of a motion to remand, the defendant has the burden of proof to establish jurisdiction. *See, e.g., Heffran v. State Auto Prop. & Cas. Ins. Co.*, No. 3:13cv513, 2013 U.S. Dist. LEXIS 110997, at *5 (M.D. Pa. Aug. 7, 2013) ("The burden of establishing jurisdiction in the removal situation rests with the defendant." (citing *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).

As stated *supra*, the citizenship of a limited liability corporation is determined by its members. *See, e.g., Zambelli Fireworks Mfg. Co.*, 592 F. 3d at 420 ("[T]he citizenship of an LLC is determined by the citizenship of its members." *quoted in Equipped LLC v. Dialectic Distrib. LLC*, Civil Action No. 18-12394 (SRC), 2019 U.S. Dist. LEXIS 8395, at *4 (D.N.J. Jan. 17, 2019)). The only "evidence" presented by Citadel regarding the citizenship of the defendants that are limited liability companies are mere recitals of the allegations of the Complaint. Notice at 4; Opp'n at 4. Not only has Citadel not provided any evidence of the citizenship of its own

members, but also it has not provided any evidence of the citizenship of the members of the other limited liability company defendants. Based upon the record before it, the Court finds that Citadel has failed to prove that "no Defendant is a citizen of the United States Virgin Islands." Notice at 6; Opp'n at 13. Consequently, at this juncture, the Court concludes that it does not have diversity jurisdiction.

### 2. Federal Question

Citadel postulates that the Court may exercise subject matter jurisdiction based upon federal question. Notice at 6. Citadel argues that this matter "is an action to recover federal funds. As such, it raises substantial issues of federal law, giving the Court federal question jurisdiction." Opp'n at 2, ¶ 5. Specifically, Citadel claims that this action falls within that slim class of cases where a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), *quoted in Gunn v. Minton*, 568 U.S. 251, 258 (2013). *See* Opp'n at 13-14 (quoting *Gunn*).

To begin, the Court looks to the nature of the claim presented. Here, the only claims in this case are brought pursuant to the Virgin Islands False Claims Act, 33 V.I.C §§ 3501-3509. Despite Citadel's allegation that this case "is in all respects a USFCA claim simply disguised as a VIFCA claim . . .", Opp'n at 15, merely because the VIFCA is similar to, and may even be a mirror image of, the United States False Claims Act does not somehow magically transform this into a federal action. The Court is unaware that the VIFCA has been found to be invalid. Thus, no federal law is implicated, nor will resolution of Relators' claims turn on construction of federal law. *See Massachusetts v. Philip Morris Inc.*, 942 F. Supp. 690, 694 (D. Mass. 1996) ("Here, there is no question of federal law, substantial or otherwise, to be determined in the prosecution of the pleaded claims. Vindication of the rights that Massachusetts' claims under its own statutory and common law will not turn on any construction of federal law. Nor is any proposition of federal law an essential element of any of Massachusetts' claims."); *see also Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 581

(E.D. Pa. 2007) ("Looked at analytically and closely, no violation of federal law is asserted in the Complaint as a basis for liability.").

Citadel asserts that "this case seeks to recover federal funds. No significant portion of the recovery will inure to the benefit of VIHFA or any other part of the Government of the Virgin Islands." Opp'n at 14. However, Citadel fails to distinguish adequately how the FEMA funds at issue differ from other federal funds that other courts have held do not create a substantial federal issue sufficient to invoke federal question jurisdiction. For example, in *Philip Morris*, the Commonwealth sued the defendants under a state law that authorized the state to recover Medicaid expenditures from cigarette manufacturers found legally liable for medical assistance payments. *Philip Morris*, 942 F. Supp. at 692-93. The defendants contended that "[c]laims to recover Medicaid expenditures, though they ostensibly are brought exclusively under the cited provisions of Massachusetts law, necessarily involve the enforcement of [the federal Medicaid statute]'s requirement that Massachusetts pursue liable third parties, and the claims therefore 'arise under' that mandate of federal law." *Id.* at 693. The Massachusetts district court, however, found that even though the federal Medicaid statute required states to pursue such remedies, the statute required collection of Medicaid funds against only third parties who were found "legally liable." *Id.* The court explains,

> Here, there is no question of federal law, substantial or otherwise, to be determined in the prosecution of the pleaded claims. Vindication of the rights that Massachusetts' claims under its own statutory and common law will not turn on any construction of federal law. Nor is any proposition of federal law an essential element of any of Massachusetts' claims. Whether the defendants, as "third parties," are liable to Massachusetts for costs expended under Medicaid, either directly or by way of subrogation, will be judged by reference to Massachusetts law. . . . [T]he State has the obligation to "take all reasonable measures to ascertain the legal liability of third parties," 42 U.S.C. § 1396a(a)(25)(A), and to pursue recovery in those cases "where such a legal liability is found to exist." *Id.,* § 1396a(a)(25)(B). No obligation is imposed on the State to see to it that "such a legal liability" does exist. And where it does exist, federal law has nothing to say about its proof, and the action to establish the liability may proceed on entirely non-federal grounds.

*Id.* at 694. Likewise, here, the action to establish liability of Defendants for violation of the VIFCA is grounded in the VIFCA, not in any federal law, and whether Defendants are liable to

*Government of the Virgin Islands ex rel. Cotto et al. v. Toliver et al.*
Case No. 3:22-cv-00052
Memorandum Opinion
Page 30 of 32

the VIHFA for any violation of the VIFCA will be judged by the construction and application of the Virgin Islands' statute.

In support of its holding, the *Philip Morris* court cites *Inter-American Univ. of Puerto Rico, Inc. v. Concepcion*, 716 F.2d 933, 934 (1st Cir. 1983), where the plaintiff "sought to collect money that had been loaned under the National Direct Student Loan ('NDSL') program . . . . Applicable regulations of the Department of Education required participating institutions to take certain steps to collect overdue loans. . . . It was contended that this federal mandate made the collection action a 'federal question.'" *Philip Morris*, 942 F. Supp. at 695 (statutory citations omitted). As the *Philip Morris* court summarizes,

> The fact that loaned funds "derived in part from federal contributions" did not necessarily "give the federal courts jurisdiction to hear any dispute arising from the NDSL loan agreement. It is the nature of the action before the court, not the nature of the loan program, that establishes the existence or absence of federal jurisdiction." *Inter-American Univ.,* 716 F.2d at 934. In other words, the presence of an overarching federal influence on a program does not make into a federal question a suit brought under state law, even where the plaintiff is pursuing rights under state law because federal law has required it to do so.

*Id*.[18] In its opinion, the *Inter-American* court finds that the university

> made no showing that either the nature of its agreement with the Department of Education or the Department's regulation of the NDSL program will be at issue, directly or indirectly, in IAU's action to recover the funds that it loaned to appellees. IAU's suit to collect the loan does not involve a right that "will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another". *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 81 L. Ed. 70, 57 S. Ct. 96 (1936). Instead, IAU's action is the action of a private lender to collect a debt from a private debtor.

*Inter-American*, 717 F.2d at 934. Similarly in the matter at bar, Citadel has not shown, and arguably cannot show, that the nature of the agreement between FEMA and the Virgin Islands/VIHFA will be at issue in this *qui tam* false claims action or how a VIFCA claim involves a right that concerns or involves the construction or effect of federal law.

---

[18] Here, unlike in *Inter-American*, Citadel does not argue that FEMA requires the VIHFA to recover FEMA grant funds that may not have been properly distributed after VIHFA carried out its contractual obligations.

Citadel cites two cases, *N.Y. ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, No. 21-cv-6883 (LJL), 2022 U.S. Dist. LEXIS 51419, at *66, 2022 WL 855920 (S.D.N.Y. Mar. 22, 2022) (New York state false claims act case removable when liability depended on determination of whether defendant tax preparer violated U.S. tax law) and *Ill. ex rel. Elder v. JPMorgan Chase Bank, N.A.*, 552 F. Supp. 3d 812, 818 (N.D. Ill. 2021) (Illinois state false claims act case removable when defendant's liability was dependent on whether defendant complied with federal banking law), Opp'n at 17, ¶ 37, in an attempt to persuade the Court that those cases are analogous to the matter at bar. However, those cases, as described by Citadel itself, involved and were dependent upon the application and construction of federal law. Citadel has not cited any federal law that may have been violated if Defendants are found liable to the VIHFA under the VIFCA.

The claims at issue here are more analogous to those presented to the court in *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576 (E.D. Pa. 2007), where the complaint "allege[d] that the Defendants violated Pennsylvania law by causing the submission of false and fraudulent claims under the Medicaid program." *Id.* at 581. The defendants focused on the fact that the claims at issue were deemed fraudulent because "Medicaid reimbursement is not available for non-medically accepted indications or non-medically necessary uses . . . ," thus, the defendants argued that the resolution of the case "depend[ed] upon the meaning of the term 'medically accepted indication,' which is defined by federal law . . . ." *Id.* at 582. The court disagreed, stating:

> [i]t is not the act of causing the submission of a claim for a non-medically accepted indication that creates liability under the state law causes of action, but rather the act of causing the submission of a *false or fraudulent* claim. A false or fraudulent claim may or may not be submitted for a medically accepted indication.

*Id.* According to the court, the Commonwealth's claims were torts (failure to warn, negligence, breach of warranty, fraud, and misrepresentation) under Pennsylvania law; the action wasn't filed "merely because the Defendants promoted their drug for off-label uses, but because they allegedly intentionally misrepresented their drug's efficacy and risks for such uses." *Id.* at 581. Thus, the court determined that the claims "turn[] not on a violation of

federal labeling standards, but on a violation of Pennsylvania common law. There is no liability asserted in the Complaint for mere failure to comply with federal law." *Id*. at 582.

In this false claims action, Relators will need to prove that Defendants committed fraud by submitting invoices to the VIHFA for work conducted by Relators and for which Defendants received payment from the VIHFA, but such payments were not then used to pay Relators. Like the claims asserted in *Eli Lilly*, even though the VIHFA paid Defendants from funds provided by FEMA, no violation of federal law is asserted in the complaint.

Based upon the foregoing, the Court finds that this matter does not involve a substantial federal issue sufficient to confer federal question jurisdiction.

## VI. CONCLUSION

For the reasons outlined above, the Court finds that Citadel's removal of this matter was timely pursuant to 28 U.S.C. § 1446(b) and the Notice of Removal is not defective. Notwithstanding the effective Notice of Removal, the Court finds that the requirement of complete diversity has not been satisfied, nor has Citadel demonstrated that the Court can exercise federal question jurisdiction. Consequently, in the absence of subject matter jurisdiction, the Court must grant the motion to remand.

An appropriate Order follows.

**Dated:** November 16, 2022

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**Chief Judge**